940 F.2d 651
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
ATCHISON & KELLER, INC., Plaintiff-Appellant,
v.
Morton SARUBIN, Defendant-Appellee.
 No. 90-2094.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 8, 1991.
Decided Aug. 9, 1991.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Paul V. Niemeyer, District Judge. (CA-87-3477-PN)
 Mark P. Friedlander, Jr., Friedlander & Friedlander, P.C., Arlington, Va., for appellant.
 Harold M. Walter, Tydings & Rosenberg, Baltimore, Md., (Argued), for appellee; Alan M. Grochal, Tydings & Rosenberg, Baltimore, Md., on brief.
 D.Md.
 AFFIRMED.
 Before ERVIN, Chief Judge, and PHILLIPS and MURNAGHAN, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Subcontractor Atchison and Keller, Inc. ("A & K") appeals the district court's refusal to pierce the corporate veil of bankrupt prime contractor Leslie Construction Co., Inc. Leslie owed A & K funds for labor performed and services rendered. The only issue presented is whether the district court erred in refusing to pierce the corporate veil in order to enforce a paramount equity. Concluding that the trial court did not err, we affirm.
 
 I.
 A.
 
 2
 A & K as the subcontractor for the remodeling of the Peabody Court Hotel, brought an action against the prime contractor, Leslie, for the unpaid balance of the funds due for the services performed and materials supplied. Leslie counterclaimed, however, asserting that the work was defective.
 
 
 3
 Following a bench trial, the court found that there was no deficiency in the work of A & K. Accordingly, the court awarded judgment against Leslie in the amount of $46,961.14.
 
 
 4
 Shortly thereafter, Morton Sarubin, the sole stockholder of Leslie, put the company into bankruptcy. This action followed, in which A & K sought to pierce the corporate veil and enforce the judgment against Sarubin.
 
 
 5
 After a bench trial, the court, on April 26, 1990, denied relief and entered judgment for Sarubin. This timely appeal followed.
 
 B.
 
 6
 This action arises out of a construction project involving the remodeling and renovation of the Peabody Court Hotel ("the Hotel"). Mount Vernon Hotel Limited Partnership ("Mount Vernon") undertook the remodeling and renovation of the Hotel. Morton Sarubin and George Mosse were the general partners of Mount Vernon. Subsequent to completion of the Hotel, Mosse sold his interest to Sarubin. The contractor on the project was Leslie, a Maryland corporation in which Sarubin is the sole shareholder. On or about April 6, 1984, Leslie entered into a subcontract agreement with A & K to perform the mechanical, heating, ventilation, air-conditioning, and plumbing work on the project. The total contract price under the subcontract agreement was $1,028,544.
 
 
 7
 The project was funded primarily through the use of two Industrial Revenue Bonds in the amount of $8,500,000. As funds were needed for the construction, requisitions were filed with Sovran Bank. Funds were disbursed to Mount Vernon, and in turn, released to Leslie for payment to the various subcontractors. Sufficient funds were budgeted to pay the entire A & K contract. Nevertheless, Leslie was capitalized with only $100. Over the course of the project A & K received payments totalling approximately $1,000,000.
 
 
 8
 During the course of the project, Sarubin and Mosse, partners of Mount Vernon, each advanced in excess of $1,000,000 of their own funds to Mount Vernon for use in the project. Near the end of the project, prior to A & K receiving its final payment of $50,476, a dispute arose between Leslie and A & K as to the quality of the latter's performance.
 
 
 9
 Subsequently, Mount Vernon advanced about $1,500,000[1] to Leslie with directions to purchase furniture, fixtures, and equipment in order to take advantage of Leslie's builder's discount. Mount Vernon had Leslie turn the furniture over to Sovran which leased it back to Mount Vernon. The leasing arrangement, a pledge and security agreement, was signed by Sovran Bank, Mosse, and Sarubin one month following the dispute over the final payment to A & K. The furniture, fixtures, and equipment were not assets of Leslie; on the contrary, Leslie was a mere conduit for the purchasing of the assets.
 
 
 10
 A & K commenced an action in district court to recover funds owed to it under the subcontract agreement. The court granted judgment in favor of A & K for $39,961.14 on November 19, 1987. Leslie lacked sufficient assets to pay this judgment, and on December 2, 1987, Leslie filed a Voluntary Chapter 7 Petition in the United States Bankruptcy Court for the District of Maryland.
 
 II.
 
 11
 A & K argues, in effect, that there was sufficient evidence to establish grounds for piercing the corporate veil. There are effectively three pillars to its argument: Sarubin's financial transactions, the fact that Leslie had only one stockholder, and that the contractor corporation was undercapitalized.
 
 A.
 
 12
 The standard for piercing the corporate veil within Maryland requires a showing of either fraud or paramount equity. Starfish Condominium Association v. Yorkbridge Service Corp., 295 Md. 693, 458 A.2d 805 (Md.1983); and Bart Arconti & Sons, Inc. v. Ames-Ennis, Inc., 275 Md. 295, 340 A.2d 225 (Md.1975). On appeal A & K has stopped just short of alleging fraud by Sarubin. It does, however, suggest that he committed certain acts to empty the coffers of Leslie in order to prevent A & K from securing its last payment for services rendered. In reviewing these acts, the state fraud standard is, nevertheless, applicable. Colandrea v. Colandrea, held that there are five elements that must be demonstrated by clear and convincing proof in order to establish fraud:
 
 
 13
 (1) a material representation of a party was false,
 
 
 14
 (2) falsity was known to that party or the misrepresentation was made with such reckless indifference to the truth as to impute the knowledge to him,
 
 
 15
 (3) the misrepresentation was made with the purpose to defraud (scienter)
 
 
 16
 (4) the person justifiably relied on the misrepresentation, and,
 
 
 17
 (5) the person suffered damage directly resulting from the misrepresentation.
 
 
 18
 42 Md.App. 421, 401 A.2d 480 (1979). We find, as did the court below, no evidence of fraud.
 
 
 19
 There is no evidence that the furniture transaction between Sovran, Mosse, and Sarubin left A & K in a position better or worse than it would have occupied had there been no agreement. Leslie was a mere channel for the purchase of the furniture; therefore, when the goods were leased back to Mount Vernon by Sovran, Leslie was not deprived of assets with which to pay A & K. As the furniture deal was neither fraudulent or detrimental to A & K, even if it could show the first element, a material misrepresentation, there is no demonstration of the fifth element, damage directly resulting from the misrepresentation. Moreover, A & K's contention that $48,000 was taken from Leslie and paid to Lake Eden, a Sarubin entity, is also without merit. The evidence reveals that Lake Eden advanced the project $290,000 from its own funds through Mount Vernon and received only $48,000 in repayment.
 
 B.
 
 20
 The paramount equity claim of A & K relies on the fact that Leslie has a sole stockholder and was undercapitalized. There are no Maryland cases that have addressed the issue of paramount equity squarely. Cases, however, concerning piercing the corporate veil generally suggest that A & K should not prevail. Moreover, given the facts of the instant case, it is not clear that A & K has asserted such an equity.
 
 
 21
 In arguing that Sarubin is liable as the sole stockholder of Leslie, A & K invokes the instrumentality rule. With such a rule:
 
 
 22
 [T]he corporate entity is disregarded ... wherein it is so organized and controlled, and its affairs are so conducted, as to make it merely an instrumentality, agency, conduit, or adjunct of another corporation. The control necessary to invoke what is sometimes called the 'instrumentality rule' is not mere majority or complete stock control but such domination of finances, policies and practices that the controlled corporation has, so to speak, no separate mind, will or existence of its own and is but a business conduit for its principal.
 
 
 23
 1 W. Fletcher, Cyclopedia of the Law of Private Corporations Sec. 43 (rev.perm.ed. 1974). (Footnotes omitted.)
 
 
 24
 Maryland cases demonstrate, however, that the invocation of this rule will not pierce the corporate veil. In Dixon v. Process Corporation, 38 Md.App. 644, 382 A.2d 893 (1978), an action was brought to obtain a decree that properties and assets of a subsidiary corporation were also those of its parent. The Dixon court found that reliance upon the instrumentality rule by the appellants was not enough to pierce the corporate veil of the subsidiary. Id., at 899. The court held that Maryland law is "crystalline" that the corporate entity will be disregarded only to prevent fraud or to enforce a paramount necessity. Id. Specifically, the corporate entity will not be violated even in the instance of a single shareholder absent fraud or a paramount equity. Quinn v. Quinn, 11 Md.App. 638, 648, 276 A.2d 425, 430 (1971). Moreover, even a demonstration that a few shareholders attempted to evade legal obligations to another corporation, absent fraud, is not enough to pierce the veil. Bart Arconti, 340 A.2d at 235.
 
 C.
 
 25
 A & K also argues that because Leslie was capitalized with only $100 that a paramount equity exists. While there may be a persuasive policy argument generally for such an equity when undercapitalized corporations go bankrupt, such is not the case here. Leslie secured sufficient funding for the project with $8,500,000 worth of bonds. Moreover, A & K received 98 percent of the money due to it by Leslie. Finally, there was no evidence produced to show that Sarubin intended to defraud A & K by not setting enough money aside for the subcontractor's work. Thus, the last pillar, like the previous two, fails to support A & K's claim.
 
 III.
 
 26
 For the foregoing reasons, we affirm the district court decision.
 
 
 27
 AFFIRMED.
 
 
 
 [1]
 Apparently, Mount Vernon received these funds from the bonds provided by Sovran